IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Duggan, M.D.,                                  Case No. 3:03CV7651

        Plaintiffs

v.                                                  ORDER

Orthopaedic Institute of Ohio, Inc., et al.,

        Defendants

Plaintiff, John Duggan, M.D., brings this suit against his former employer, Orthopaedic Institute of Ohio, Inc. (OIO), his former colleagues, and OIO's administrative director, Paul Clark. Plaintiff's claims are: 1) OIO and the individual defendants violatd the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; 2) the individual defendants breached fiduciary obligations owed by them to the plaintiff; and 3) OIO is obligated to indemnify the plaintiff for certain losses and expenses.[1]

Pending is defendant's motion for summary judgment. For the reasons that follow, defendants motion shall be granted.

**Background**

---

[1] I previously dismissed a claim for tortious interference with contract against one of the individual defendants. (Docs. 16, 26.)

Plaintiff and several other orthopaedic surgeons in the Lima, Ohio, area combined their practices in September, 1997, and formed the Orthopaedic Institute of Ohio, Inc., a C Corporation with the physicians as the sole shareholders. In February, 1998, the physician-shareholders opened the Surgery Center of West Central Ohio, which subsequently was converted to an orthopaedic hospital, the Institute for Orthopaedic Surgery (IOS).

In addition to the practice and the hospital, the physicians formed two organizations to hold land, equipment, and other assets – the West Central Ohio Land Development Group LLC I and II.

Plaintiff served as president of OIO and IOS, director of OIO's laboratory and osteoporosis clinic, and head of the two land development groups. He had an employment agreement which he had drafted for his position as president of OIO and IOS. The agreement was effective January 1, 2001, had a duration of twelve months, and included two twelve-month renewal periods extending the agreement through December 31, 2003. Plaintiff received $75,000 annual compensation for his added responsibilities in addition to his salary for his services as a physician.

In October, 2002, despite some reservations, a majority of the physician-shareholders agreed to renew plaintiff's employment agreement for its final year. A decision regarding renewal had to be made by November 15th of each year because the agreement automatically renewed on that date if the board did not give notice to the contrary.

During the week of February 10, 2003, plaintiff traveled to his second home in Arizona and later to a medical conference in Los Angeles. On February 12, 2003, plaintiff participated in a telephone conversation with Clark and the clinic manager, Noralu Kahle. During this conversation, plaintiff became aware of three problems at OIO relating to: 1) handling of Worker's Compensation files which plaintiff

2

believed Clark had previously resolved; 2) concerns on the part of Ford Motor Company, one of the largest sources of patients for OIO, regarding the manner in which OIO handled its patients; and 3) a change, which contravened a policy adopted by OIO's Board of Directors and also affected plaintiff's surgical proctice, by Dr. James O'Neill in his procedures for accepting new patients.

Plaintiff became very upset on learning of these problems. He swore at Clark and made statements indicating that plaintiff intended to terminate Clark once he returned to Ohio.

Clark then prepared a letter to the physician-shareholders complaining about how he had been treated during his conversation with plaintiff and reciting plaintiff's vulgar statements. Clark distributed copies of the letter to the physician-shareholders' offices on February 16, 2003.

After reviewing the letter, a meeting was called for the evening of February 17, 2003. Plaintiff received a copy of the letter that day, his first day back from his trip. Plaintiff also became aware of the meeting to be held that evening.

In the past when complaints had been made about the conduct of a shareholder, the physician-shareholders conducted investigations and consulted an attorney before responding. As to Clark's complaint, the physician-shareholders neither conducted a formal investigation nor gave any consideration to consulting an attorney.

Dr. David Davis served as chair of the meeting. The physician-shareholders discussed Clark's letter and plaintiff's abusive behavior toward him and other employees. They expressed concern over the abuse and the possibility that his treatment may lead to employee lawsuits against OIO.[2] Others believed that

---

[2] At the time of the meeting, OIO was involved in litigation brought by a former employee as a result of her termination. Several of the physician-shareholders had given depositions with regard to the lawsuit the

3

plaintiff, as president of OIO and IOS, director of OIO's laboratory and osteoporosis clinic, and head of the two land development groups, had too much responsibility.

The meeting concluded with a vote to terminate plaintiff as president. The physican-shareholders also decided to split the duties of running all the entities – with OIO having one president and IOS another. The physician-shareholders elected Dr. Michael Wieser president of OIO and plaintiff president of IOS.

Plaintiff initially accepted the presidency of IOS. On February 18, 2003, however, the day after the meeting, plaintiff resigned as president of IOS.

By the end of February plaintiff was looking for a position in Arizona. OIO began at some point to receive requests for licensing and credentialing information from Arizona. On May 12, 2003, plaintiff signed an employment agreement with a professional practice group in that state. On May 30, 2003, plaintiff submitted a letter informing Dr. Wieser of his withdrawal from OIO effective June 28, 2003.

## Discussion

### 1. ADEA Claim

Defendants seek summary judgment on plaintiff's ADEA claim on numerous grounds. First, defendants contend that plaintiff's claim fails against the physician-shareholders because individual defendants cannot be held individually liable under the ADEA.

Defendants also argue that plaintiff's ADEA claim fails because he: 1) has no direct evidence of age discrimination; and 2) cannot establish a prima facie case of age discrimination based on circumstantial

---

previous week.

evidence because he was not replaced by a significantly younger person, was not treated differently than similarly situated younger employees, was not constructively discharged, and cannot establish pretext.

Defendants further argue that plaintiff's claim for compensatory and punitive damages under the ADEA fails because compensatory and punitive damages are not recoverable under the ADEA.

In a supplemental motion for summary judgment, defendants also seek summary judgment on the basis that plaintiff was not an "employee" under the ADEA.

Defendants' arguments as to plaintiff's ADEA claim are persuasive.

### a. Merits of Plaintiff's Claim – Disparate Treatment Theory

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff may establish a claim under the ADEA by offering either direct evidence or circumstantial evidence of discrimination. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Under the first option, "[d]irect evidence of discrimination is that 'evidence, which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)).

If a plaintiff cannot provide direct evidence of improper motive, he may offer indirect and circumstantial evidence of such a motive under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *Mitchell*, 389 F.3d at 181.

### i. Direct Evidence

Plaintiff contends that statements made by Dr. James Nieman to plaintiff's wife in which he referred to plaintiff as an "old fart" are direct evidence of discriminatory motive.[3] Defendants contend that these statements – made in a social setting to plaintiff's wife – are insufficient in demonstrating discriminatory motive.

I agree with defendants. While "an employer's comments referring directly to a plaintiffs age may support an inference of discriminatory animus," *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025 (6th Cir. 1993), the Sixth Circuit has consistently held that age related statements are inadmissible if they "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir. 1986) (statements regarding young people taking over in management and indicating a negative view of "old-timers" held irrelevant and unduly prejudicial); *see also Gangné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989) (isolated remark by supervisor that he "needed younger blood" was irrelevant, prejudicial, and insufficient to prove age discrimination), *overruled on other grounds by St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993); *Schrand v. Fed. Pac. Electric Co.*, 851 F.2d 152, 155-56 (6th Cir. 1988) (comments that employees were "too old" held irrelevant and unduly prejudicial); *McLaurin v. Fischer,* 768 F.2d 98, 104 (1985) (isolated statement regarding the "young men whom we would like to attract" held irrelevant to issue of age

---

[3]

Specifically, Dr. Nieman allegedly said to plaintiff's wife at dinner at the Shawnee Country Club, "I can't believe a babe like you is with such an old fart like that." (Doc. 45 at 48). At another dinner occasion, Dr. Nieman allegedly stated: "I can't believe you're with such a boring old man." (*Id*. at 49).

Additionally, plaintiff's wife testified that Keith Davis, a mutual friend of plaintiff's wife and Dr. Nieman, told plaintiff's wife that Dr. Nieman had told Davis that "they're trying to get rid of the old fart, and they finally did it." (*Id*. at 50.) Plaintiff's wife's testimony as to what Dr. Nieman said to Davis is hearsay, and thus not properly before me.

6

discrimination); *Bigelow v. ANR Pipeline Co.*, 121 F.3d 707, 1997 WL 428964, *5 (6th Cir. July 29, 1997) (holding that a reasonable juror could not infer discrimination based on a supervisor's comments that the company needed to "get rid of its old fart pilots"); *Boyle v. Mannesmann Demag Corp.*, 991 F.2d 794, 1993 WL 113734, *2 (6th Cir. April 13, 1993) (statement that the company had "too many old farts" held irrelevant and thus inadmissible).

Moreover, the Sixth Circuit has held that "'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden ...' of demonstrating animus." *Bush v. Dictaphone Corp*. 161 F.3d 363, 369 (6th Cir. 1998) (alteration in original) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989)(O'Connor, J., concurring)).

On the facts before me, I cannot find that Dr. Nieman's age related comments are sufficient to demonstrate discriminatory animus. Though the statements were made by an individual involved in the decision to terminate plaintiff, they were made in a social setting and thus were unrelated to the decisional process. The statements are also too abstract to demonstrate that age was a motivating factor in terminating plaintiff; simply referring to plaintiff as an "old fart" does not prove that plaintiff's age was a factor behind the decision of Dr. Nieman, nor for that matter, a factor behind the decisions of any of the other board members.

Therefore I find that plaintiff's "direct evidence" is insufficient to establish discriminatory animus.

### ii. Indirect Evidence

Age-discrimination claims based on circumstantial evidence are analyzed under a three-step approach. *Wexler*, 317 F.3d at 574 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344,

350 (6th Cir. 1998)). This approach first requires an employee to establish a prima facie case of age discrimination. *Id*.

To establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must show that he or she: 1) is a member of the protected class (i.e., at least forty years of age); 2) was subjected to an adverse employment action; 3) was qualified for the position; and 4) was treated differently from similarly situated employees outside the protected class (i.e., replacement by a significantly younger person). *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir., 2003); *Mitchell*, 389 F.3d at 181 (citing *McDonnell Douglas*, 411 U.S. at 802).

If the employee establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Wexler*, 317 F.3d at 574. If the employer does so, the burden shifts back to the employee to "rebut[] this proffered reason by proving that it was a pretext designed to mask age discrimination." *Id*.

Defendants contend that plaintiff cannot establish a prima facie case of age discrimination based on circumstantial evidence because he: 1) was not replaced by a significantly younger person; 2) was not treated differently than similarly situated younger employees; 3) was not constructively discharged; and 4) cannot establish pretext.

I find defendants' first and fourth arguments persuasive.

Plaintiff has satisfied the first three prongs of a prima facie case of age discrimination. First, he was fifty-one years old at the time of his termination.

Second, by being terminated as president of OIO, plaintiff was subjected to an adverse employment action. Moreover, plaintiff has raised a genuine issue of material fact as to plaintiff's allegation

that his termination as president of OIO and alleged subsequent poor treatment by his coworkers resulted in his constructive discharge as a physician-shareholder. The combination of the two suffice to establish the second prong of a prima facie case.

Third, the parties do not dispute that plaintiff was qualified to serve as president of OIO or to remain a physician-shareholder of the related corporations. This is further demonstrated by the board's decision to elect plaintiff to serve as president of IOS even after his removal as president of OIO.

Plaintiff, however, cannot establish the forth prong of his prima facie case because he cannot show that he was replaced by a significantly younger person. The Sixth Circuit has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Grosjean*, 349 F.3d at 340.

At the time plaintiff was terminated from his position as president of OIO, he was fifty-one years old. The board elected Dr. Wieser, at the time aged forty-five, to replace plaintiff as president. Because the age difference between plaintiff and his replacement is six years, plaintiff was not replaced by a significantly younger person, and thus cannot make out a prima facie case of age discrimination.[4]

Alternatively, even if plaintiff could establish a prima facie case of age discrimination, defendants have set forth a nondiscriminatory reason for his termination, and plaintiff has failed to show that this proffered reason was pretexual.

---

[4] While the adverse employment action at issue in this case also includes plaintiff's constructive discharge from all of the organizations as a physician-shareholder, plaintiff has failed to set forth any evidence that he was replaced as a physician-shareholder by a significantly younger person. Thus based on either circumstance, plaintiff has failed to meet his burden.

To show pretext, plaintiff must show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell*, 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Defendants have proffered several legitimate nondiscriminatory reasons for plaintiff's termination: he was over-extended and over-worked, did not delegate work effectively, failed to share information, had poor people management skills, and treated OIO employees in an abusive manner. Defendants further contend that Clark's letter triggered plaintiff's termination.

While plaintiff concedes that he used profanities and abusive language during a phone conversation with Clark on February 12, 2003, and acknowledges that defendants were concerned that plaintiff's behavior would result in a lawsuit by Clark or potentially lawsuits by other employees, plaintiff nonetheless contends that these reasons are pretextual. He argues that defendants failed to conduct an adequate investigation into Clark's allegations, failed to consult with counsel before terminating him, and rushed to judgment in deciding to terminate him.

None of these arguments, however, is material to the issue of pretext. By these arguments, plaintiff seems to suggest that he was entitled to due process rights prior to his termination. But no such due process constraints exist here. Defendants had no duty to conduct a formal investigation into Clark's complaints or to consult with counsel prior to terminating plaintiff.

Plaintiff also contends that Clark's letter contained inaccuracies or falsehoods which an investigation, had defendants taken the time to investigate the allegations, would have revealed. Even if

10

Case: 3:03-cv-07651-JGC  Doc #: 90  Filed: 04/18/05  11 of 20.  PageID #: 486

Clark's letter contained inaccuracies or falsehoods, the failure to discover those inaccuracies does not demonstrate pretext. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (If the employer held an "honest belief" in the proffered basis for the adverse employment action, (i.e., the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made) the employer's basis for termination is not pretextual.)

The determination of whether an employer reasonably relied on the facts before it does not "'require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Id.* (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)).

Plaintiff has not shown that the defendants did not hold an honest belief in the proffered basis for plaintiff's termination. Plaintiff admitted the essential contention – that he had been abusive and vulgar toward Clark. In light of this admission, plaintiff cannot meet his burden of showing that this articulated reason was pretextual.

Even if the board's decision was hasty and unadorned by fair treatment and consideration, I am not in a position to second guess its judgment. "It is axiomatic that . . . [a] Court does not sit as a 'super-personnel' board of review to second guess or re-examine an employer's nondiscriminatory business decisions." *Seay v.Tenn. Valley Auth.*, 340 F. Supp. 2d 832, 842 (E.D. Tenn. 2004); *see also Rush v. United Techs., Otis Elevator Div.*, 930 F.2d 453, 458 (6th Cir. 1991) ("[I]t is not appropriate for us to second guess the business judgment of employers in personnel matters.").

11

Based on the record before me, a rational fact-finder could not find that age was a factor in the board's decision.

### b. Merits of Plaintiff's Claim – Disparate Impact Theory

In a supplemental brief, plaintiff argues for the first time that summary judgment for defendants is improper because a policy change in the structure of the related corporations was made immediately following plaintiff's departure. The policy change related to the method by which new physician-shareholders buy into the various entities.

Plaintiff contends this policy change benefitted younger partners, and that pursuant to *Smith v. City of Jackson*, ---- U.S. ----, 125 S. Ct. 1536 (2005), plaintiff is no longer required to prove intent, and instead has satisfied his burden by showing disparate impact as a result of this policy change.

Defendants counter that the changes were necessary because, as the entities grew and increased in value, it become more difficult for new physicians to join the group and buy into the organizations. Thus, defendants contend, the change was based on a reasonable factor other than age (i.e., the change was made for the purpose of attracting and retaining new physician-shareholders).

The *Smith* case involved a suit by police and public safety officers employed by the city of Jackson, Mississippi. The officers argued that the city had violated the ADEA by giving less generous salary increases to officers over the age of forty than to younger officers. The city argued that the officers could not recover under a disparate impact theory and alternatively, that the raise differential was based on a reasonable factor other than age (i.e., the city's desire to raise the salaries of junior officers to make them competitive with comparable positions in the market).

12

The Supreme Court held that the ADEA authorizes recovery under a disparate-impact theory of liability. ---- U.S at ----, 125 S.Ct. at 1544. The Court recognized, however, that § 4(f)(1) of the ADEA significantly narrows coverage for disparate impact claims by permitting any "otherwise prohibited" action "where the differentiation is based on reasonable factors other than age." *Id*. at 1538. On these facts, the Court denied the officers' claim and held "that the City's decision to grant a larger raise to lower echelon employees for the purpose of bringing salaries in line with that of surrounding police forces was a decision based on a 'reasonable factor other than age' that responded to the City's legitimate goal of retaining police officers." *Id*. at 1546.

In the case at hand, I find that plaintiff's claim fails on similar grounds. The defendants based the change to the buy-in method on a reasonable factor other than age: namely, like the city in *Smith*, the defendants in this case sought through their policy to attract and retain new physician-shareholders.[5]

Because plaintiff's ADEA claim fails on the merits, I find it unnecessary to address defendants' remaining arguments as to that claim.

## 2. Breach of Fiduciary Duty

Plaintiff contends that defendants breached fiduciary duties owed to plaintiff as an employee and minority shareholder of OIO. Defendants counter that they did not breach their fiduciary duty in terminating plaintiff as president of OIO because plaintiff remained employed as a physician-shareholder, and they had

---

[5] In any event, this change, even if motivated improperly by conditions of age, could not have affected plaintiff because, as he concedes, the change occurred after his departure. He, accordingly, does not have standing to assert age-based discrimination vis-a-vis the change.

a legitimate business reason for terminating plaintiff from this position. Alternatively, defendants contend that even if a breach occurred, plaintiff's damages are limited to the compensation under his employment agreement.

Ohio courts have found "a heightened fiduciary duty between majority and minority shareholders in a close corporation." *Crosby v. Beam*, 47 Ohio St. 3d 105, 108 (1989); *Cruz v. S. Dayton Urological Assocs., Inc.*, 121 Ohio App. 3d 655, 662 (1997); *Gigax v. Repka*, 83 Ohio App. 3d 615, 621 (1992). The fiduciary duty "is one of the utmost good faith and loyalty." *Cruz*, 121 Ohio App.3d at 662 (citing *Crosby*, 47 Ohio St.3d at 108).

When a minority shareholder is also an employee of a close corporation, the fiduciary duty provides additional protection to minority shareholder employees: "majority shareholders of a close corporation may not terminate the employment of a minority shareholder without a legitimate business reason for the termination." *Crosby*, 47 Ohio St. 3d at 109; *see also Gigax*, 83 Ohio App.3d at 623 ("[A]n ouster initiated for legitimate business purposes and in good faith does not violate this fiduciary duty.").

In a prior decision, I found that OIO has the indicium of a close corporation. *Duggan v. Orthopaedic Inst. of Ohio, Inc.*, 2004 WL 951469 at *2-3 (N.D. Ohio April 8, 2004). Moreover, the parties do not dispute that plaintiff was terminated from his position as president of OIO. For the purposes of summary judgment, I will presume that these circumstances (i.e., OIO's status as a close corporation

14

and plaintiff's termination from his position as president, despite his continued status as a physician-shareholder) are sufficient to implicate the fiduciary duty.[6]

Plaintiff advances four theories by which the individual defendants breached their fiduciary duty to him as a minority shareholder: 1) considering his age as a factor in his termination as president of OIO; 2) failing to conduct an adequate investigation prior to terminating him as president of OIO; 3) giving no consideration to the impact their actions would have on plaintiff and his ability to continue as a member of the practice group; and 4) failing to give plaintiff proper notice of the directors' meeting at which he was terminated.

I do not find plaintiff's arguments to be persuasive.

### a. Age Discrimination

Because I found that plaintiff's claim under the ADEA fails on the merits, plaintiff's claim that the individual defendants breached their fiduciary duty in terminating plaintiff as a result of his age must also fail.

### b. Duty to Investigate

Plaintiff has cited no case law, and independent research of this court has not revealed any support, for plaintiff's proposition that defendants had a duty to conduct a thorough investigation into the complaints leading to his termination.

---

[6] Even if these circumstances do not give rise to the fiduciary duty, the duty is nonetheless implicated in light of plaintiff's allegation of constructive discharge.

Defendants give several reasons for plaintiff's termination. The record shows that the defendants' reasons for terminating plaintiff did in fact motivate the decision-makers, and I will not second guess the wisdom of those concerns.

### c. Duty to Consider Impact Actions Would Have on Plaintiff

Plaintiff further argues that defendants breached the fiduciary duty by failing to consider the impact their actions would have on plaintiff and his ability to continue as a member of the practice group.

While defendants had a duty to act with good faith toward plaintiff, defendants had no duty to subjugate the corporation's interests to plaintiff's individual interests. Defendants had a duty to terminate plaintiff for a legitimate business reason, and as discussed *infra*, defendants satisfied that burden.

### d. Lack of Notice

Plaintiff also contends that defendants breached their fiduciary duty by failing to comply with the notice requirements set forth in the Code of Regulations. Namely, plaintiff argues that although he received notice of and attended the meeting at which he was terminated, the notice did not inform him far enough in advance of the meeting date and time and did not inform him as to the topics to be discussed at the meeting.

Defendants concede that a violation of the notice provisions of the Code of Regulations occurred, but argue that this is a technical violation that does not amount to a breach of the fiduciary duty.

OIO's Code of Regulations provides that every director receive notice of a directors' meeting no later than two days before the date of the meeting. (Doc. 71, Ex. 9, Article 2, § 2.13.) The Code further requires that in the event the board of directors is considering the removal of an officer, the notice of the

16

meeting (or written waivers thereof) "shall have specified that such removal action was to be considered." (Doc. 71, Ex. 9, Article 3, § 3.4.)

It is undisputed that the letter written by Clark, dated February 17, 2003, prompted the board of OIO to hold an emergency session at 5:30 p.m. that evening. Plaintiff received a copy of the letter that day and was notified that a meeting was to be held that evening, at which time the directors planned to discuss the letter. Because plaintiff was not notified of the meeting two days in advance, and because the notice plaintiff received did not specify that plaintiff's removal as an officer was to be considered, I find that the Code of Regulations has been violated.

I do not find, however, that this violation amounts to a breach of the fiduciary duty by the individual defendants. Plaintiff attempts to conflate defendants' obligations owed to him in his role as a director with defendants' fiduciary duty toward him as an employee-shareholder. The obligation to comply with the notice requirement arises in plaintiff's role as a director of OIO. The fact that plaintiff was owed this notice as a director does not broaden the fiduciary duty defendants' owe plaintiff as an employee-shareholder. *See Leigh v. Crescent Square, Ltd.* 80 Ohio App.3d 231, 239, (1992) (holding that the concept of fiduciary duty did not require general partners to notify ousted partner of his impending ouster and that absent explicit provisions in a partnership agreement requiring advance notice to a party being removed, notice, hearing, or a showing of cause is not implicitly required).

### e. Good Faith and Legitimate Business Reason for Termination

Defendants' sole fiduciary duty relative to termination toward their fellow employee-shareholder was to take that step in good faith and for legitimate business reasons. Defendants satisfied this obligation, and therefore, did not breach the duty owed to plaintiff as an employee-shareholder.

Defendants give several reasons for their decision to terminate the plaintiff; namely, that he was over-extended, refused to delegate work, failed to share information, had poor people management skills, and treated OIO employees in an abusive manner. As the "proverbial straw that broke the camel's back," defendants also point to, and plaintiff concedes, his use of profanities and abusive language during the phone conversation with Clark. (Doc. 41 at 25.) Defendants were concerned that plaintiff's behavior would result in a lawsuit by Clark or potentially lawsuits by other employees.

An employee's inappropriate behavior toward other employees is a legitimate business reason for termination in the context of a close corporation. *See Priebe v. O'Malley*, 89 Ohio App. 3d 8, 12 (1993) (holding that majority shareholders had legitimate business reasons for terminating a shareholder which included the reason that the shareholder was not working well with other employees).

The record demonstrates that defendants acted in good faith. It is undisputed that Clark's letter outlining plaintiff's abusive behavior prompted defendants to call the emergency meeting which led to plaintiff's termination as OIO's president. Moreover, plaintiff concedes that defendants were angered by a pending lawsuit brought by a former employee and were concerned that plaintiff's behavior might result in further litigation either by Clark or other employees. Thus, based on the undisputed record before me, a rational fact-finder could only find that the concerns articulated by defendants caused the defendants to

terminate plaintiff as their president, and that, in doing so, they did not breach any fiduciary obligation owed to him.

It is not necessary to address defendants' arguments as to damages.

### 3. Breach of the Duty of Indemnification

Plaintiff's third claim asserts that defendants breached their duty of indemnification by failing to reimburse plaintiff for attorney's fees incurred as a consequence of a lawsuit filed by Julie Basset, OIO's former office manager. Defendants contend that plaintiff was not entitled to indemnification for these fees because, instead of using counsel provided by OIO, plaintiff obtained separate counsel on the basis that his "interest and the group's interests were not aligned as they had been." (Doc. 31 at 34).

The defendants' motion for summary judgment satisfies their burden as movant under Fed. R. Civ. P. 56(e) by identifying several depositions, which defendants believe demonstrate the absence of a genuine issue of material fact, as to plaintiff's claim for breach of the duty of indemnification. Plaintiff, however, has failed to satisfy his reciprocal burden.

"Rule 56(e) 'requires the nonmoving party to go beyond the pleadings' and present some type of evidentiary material in support of his position." *Carmen v. Unison Behavioral Health Group, Inc.*, 295 F. Supp. 2d 809, 812 (N.D. Ohio 2003) (quoting *Celotex*, 477 U.S. at 324). Not only has plaintiff provided no evidentiary material contesting defendants' motion, but he has failed to mention entirely his third claim in his brief in opposition to defendants' motion for summary judgment.

Plaintiff's failure to provide evidentiary material showing a genuine issue of material fact requires granting defendants' motion for summary judgment on plaintiff's breach of the duty of indemnification claim.

**Conclusion**

In light of the foregoing, it is

ORDERED THAT

Defendants' motion for summary judgment as to all counts in plaintiff's complaint be, and the same hereby is, granted. Defendants' supplemental motion for summary judgment be, and the same hereby is, denied as moot;

So ordered.

                          /s/James G. Carr
                          James G. Carr
                          Chief Judge